UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re:<br>EMPIRE 1 HOME IMPROVEMENTS, INC.,<br>Debtor | Case No. 24-40551 (EDK)<br>Chapter 7 |
| JONATHAN R. GOLDSMITH, CHAPTER 7 TRUSTEE OF EMPIRE 1 HOME IMPROVEMENTS, INC.<br>Plaintiff<br>v.<br>CAPITAL ONE NATIONAL ASSOCIATION,<br>Defendant | Adversary Proceeding No. 26-04016 |

**AMENDED ASSENTED TO MOTION TO COMPROMISE CLAIM IN CONNECTION WITH AN ADVERSARY PROCEEDING**

Now comes JONATHAN R. GOLDSMITH, the duly appointed, qualified and acting Trustee in the above-captioned proceeding (the "Trustee") and CAPITAL ONE NATIONAL ASSOCIATION ("Capital One") and respectfully moves this Honorable Court for an Order approving the compromise with Capital One in connection with the adversary proceeding to collect preferential transfers under 11 U.S.C. §547 which was filed by the Trustee on May 26, 2026. In support of this Amended Motion, the parties respectfully represent as follows:

**BANKRUPTCY PROCEDURAL BACKGROUND**

1. On May 27, 2024, the above-named debtor (the "Debtor") filed a Voluntary Petition

under the provisions of Chapter 7 of the Bankruptcy Code. The Trustee was appointed thereafter and has served as the trustee in this case.

2. The original Debtor's Section 341 Meeting of Creditors ("341 Meeting") was held on June 26, 2024.

## FACTUAL BACKGROUND

3. The Debtor made nine separate payments to Capital One in amounts totaling $31,700 between and including March 1, 2024 and April 18, 2024 (collectively the "Preferential Transfers") for an apparent company credit for which the Debtor's president, Clinton Galvin, was the sole authorized user.

4. The Preferential Transfers all occurred within 90 days of the commencement of the Case.

5. After initiation of an adversary proceeding by the Trustee, the Trustee and Capital One have agreed to settle the matter for the sum of $21,000.00 (the "Settlement Payment").

6. The Trustee believes that this compromise is in the best interest of the Bankruptcy Estate (the "Estate") as it provides the payment of an amount certain to the Estate and avoids the cost, delay and uncertainty associated with litigation. The Trustee notes that if this matter were to be litigated, Capital One is prepared to argue a new value defense for a portion of the preference claim. If Capital One establishes this affirmative defense, the Estate could possibly receive less than the disputed amount made also having spent the costs of litigation noted, an outcome less preferable to the Estate.

7. Capital One has agreed to remit the Settlement Payment to the Trustee within thirty business (30) days of (i) Capital One's receipt of this Agreement fully executed by the Trustee,

(ii) Capital One's receipt of a fully completed and executed IRS Form W-9 from the Trustee for the Estate, (iii) Capital One's receipt of the information required to process an Automated Clearing House Network Transfer (the "ACH Transfer"), including bank name, bank routing number and bank account number (the "ACH Instructions"), (iv) the Court's entry of an order approving this Agreement and (v) execution of the release agreement attached hereto as Exhibit "A".

8. In evaluating a settlement for the estate, the Bankruptcy Court should assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal. *Jeffrey v. Desmond*, 70 F.3d 183, 185, quoting *In re GHR Cos.*, 50 B.R. 931 (Bankr.D.Mass. 1985). A Trustee's judgment concerning the justifications for a settlement is ordinarily provided some deference. *Hill v. Burdick* (In re Moorehead Corp., 208 B.R. 87 (1st Cir. 1997)).

9. Any objection must state the name and docket number of this case, identify the party objecting to the proposed compromise, and state the specific reasons for the objection. Any reasons not set forth therein will be deemed waived.

10. If a timely objection is filed, the Court will schedule a hearing on whether the intended compromise should be approved. Any party filing an objection will be expected to appear at the hearing. At that hearing, the Court may take further action without further notice to parties in interest.

WHEREFORE, the Trustee and Capital One respectfully request that this Honorable Court:

(i) approve the compromise in connection with the adversary proceeding;

(ii) authorize the Trustee to sign the Release and execute any documents reasonably necessary to effectuate the settlement; and

(iii) for such other relief as is just and proper.

JONATHAN R. GOLDSMITH, TRUSTEE IN BANKRUPTCY FOR EMPIRE 1 HOME IMPROVEMENTS, INC.

Dated: August 5, 2026

By:____________________
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
67 Market Street
Springfield, MA 01103
Tel. (413) 737-0260

ASSENTED TO:
CAPITAL ONE NATIONAL ASSOCIATION

Dated: August 6 , 2026

By: Signed by: Christopher Edelman
FCB6D76921404D4...

Its: Senior Counsel

# *Exhibit "A"*

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is made and entered into by and between JONATHAN R. GOLDSMITH (the "Trustee"), as Chapter 7 Trustee for EMPIRE 1 HOME IMPROVEMENTS, INC., (the "Debtor"), on the one hand, and CAPITAL ONE NATIONAL ASSOCIATION, and its successors and assigns (collectively, "Capital One") on the other hand. Collectively, the Trustee and Capital One shall be referred to as the "Parties."

## RECITALS

This Agreement is entered into with reference to the following facts and recitals, and are made part of this Agreement:

A. On or about January 3, 2015, the Debtor applied for and opened a Capital One Account ending in 1220 (the "Account").

B. On or about May 27, 2024, the Debtor filed a Chapter 7 Voluntary Petition in the United States Bankruptcy Court for the District of Massachusetts (the "Court"), Case No. 24-40551 (the "Bankruptcy Case").

C. Shortly after the Bankruptcy Proceeding was filed, the Trustee was appointed to administer the Debtor's bankruptcy estate (the "Estate").

D. On or about May 26, 2026, the Trustee commenced an adversary proceeding in the Bankruptcy Case (Adv. Pro. No. 26-04016, the "Adversary Proceeding") by filing a complaint against Capital One National Association, alleging that Capital One National Association had accepted nine (9) pre-petition payments from the Debtor on the Account in amounts totaling $31,700.00, which the Trustee contends are avoidable as a preferential transfers under 11 U.S.C. §§ 547 and 550 (the "Claims").

E. The Parties have entered into this Agreement to avoid the time and expense of litigation and without admitting fault or liability of any kind.

In consideration of the covenants, promises and undertakings set forth herein and other good and valuable consideration, the sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

## SETTLEMENT PROVISIONS

1. **Settlement Consideration.** Within thirty business (30) days of (i) Capital One's receipt of this Agreement fully executed by the Trustee, (ii) Capital One's receipt of a fully completed and executed IRS Form W-9 from the Trustee for

the Estate, (iii) Capital One's receipt of the information required to process an Automated Clearing House Network Transfer (the "ACH Transfer"), including bank name, bank routing number and bank account number (the "ACH Instructions") and (iv) the Court's entry of an order approving this Agreement, Capital One shall issue the ACH Transfer to the bank account provided in the ACH Instructions in the amount of twenty-one thousand dollars ($21,000.00) (the "Settlement Funds").

2. **Dismissal of Proceedings.** Within five (5) days of receipt of a fully executed copy of this Agreement, the Trustee will undertake the necessary steps to obtain the Court's approval of this Agreement. Within five (5) days of receipt of the Settlement Funds, the Trustee will request the dismissal of any and all proceeding(s) he commenced against the Released Parties, including the Adversary Proceeding, with prejudice and in their entirety. The Parties shall bear their own costs, including attorneys' fees, related to such proceeding(s).

3. **Covenant Not to Sue.** Upon execution of this Agreement by the Parties, the Trustee automatically and without further action or notice agrees not to commence, maintain or assert against the Released Parties (as defined below), either directly or indirectly, derivatively, on behalf of the Estate of the Debtor, any of the Released Claims (as defined below). In addition, nothing in this Agreement shall prohibit the Released Parties from interposing the argument, and tendering evidence relating thereto, that this Agreement provides a total or partial defense against any subsequent claim, action, litigation, arbitration or other proceedings by the Trustee or the Releasing Parties that, in the Released Parties' sole determination, may involve, implicate, relate to or touch upon any of the Released Claims.

4. **No Admission.** The Parties understand that each other denies liability for all Claims asserted in the Adversary Proceeding and that this Agreement is entered into purely as a compromise of disputed matters for the purpose of avoiding the uncertainty associated with bankruptcy litigation and the further costs of defending any bankruptcy litigation. Settlement of the Claims asserted in the Adversary Proceeding and the obligations created by this Agreement are not, and shall not be construed as, an admission of liability of the Parties or any other person or entity on any claim whether or not asserted in the Bankruptcy Case or Adversary Proceeding.

5. **Release of Claims.** Except for the obligations created by this Agreement, the Trustee, on behalf of the Estate, its personal representatives, agents, successors, heirs or assigns (all of the foregoing persons are hereinafter collectively referred to as the "Releasing Parties") hereby remises, releases, acquits, satisfies and forever discharges Capital One and any other entities or persons and their parents, subsidiaries, affiliates and each of their respective officers, directors, employees, shareholders, members, partners, attorneys, representatives, agents,

administrators, predecessors, successors and assigns (all of the foregoing persons and entities are hereinafter collectively referred to as the "Released Parties"), of and from all manner of action and actions, cause and causes of action, petitions, suits, losses, debts, dues, offsets, sums of money, accounts, liabilities, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, costs, fees, expenses, rights, duties, obligations, liens, judgments, executions, claims, counterclaims and demands whatsoever, in law or in equity, whether direct or indirect, liquidated or unliquidated, contingent or actual or of whatever type or nature that were, or could have been, raised in the Bankruptcy Case, the Adversary Proceeding or that in any way arise out of or relate to the Account (collectively, the "Released Claims"), which the Releasing Parties ever had, or now have against any or all of the Released Parties as of the date of this Agreement. The Trustee understands and agrees that this Agreement fully and finally releases and forever resolves the Released Claims, including claims that may be unknown, unanticipated and/or unsuspected related in any manner to the Released Claims. The Trustee acknowledges that he may subsequently discover facts different from or in addition to those now known or believed to be true regarding the subject matter of this Agreement and agrees that this Agreement shall remain in full force and effect notwithstanding the existence or discovery of any such different or additional facts. The Trustee expressly waives any right to assert hereafter that any claims were excluded from this Agreement through ignorance, oversight, error or otherwise. The Trustee further agrees, for himself and the Releasing Parties, that this paragraph constitutes a waiver of any statutory provision, right or benefit of any state or territory of the United States or any jurisdiction and any principle of common law, at law or in equity, that prohibits the waiver of unknown claims.

Notwithstanding any provision of this Agreement, nothing in this Agreement shall be construed as Capital One's release of any claims or other rights against the Debtor. In addition, this Agreement shall not preclude Capital One from attempting to collect and/or collecting debt(s) that the Debtor may owe to Capital One that the Debtor incurred after filing the Bankruptcy Proceeding.

6. **Conflicts.** This Agreement is to be construed in accordance with and governed by the laws of the United States of America and by the internal laws of the Commonwealth of Virginia without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the laws of the United States of America or the internal laws of the Commonwealth of Virginia to the rights and duties of the parties. Any failure to enforce any terms or conditions of this Agreement by any of the Parties shall not constitute a waiver of any right to assert any of the terms and conditions of this Agreement.

7. **Account Terms And Other Accounts Unaffected.** The Trustee acknowledges and agrees that nothing contained in this Agreement shall alter or

affect the terms and conditions governing the Account as well as any other loan, debt, obligation, account or product that the Debtor has, or may have in the future, with Capital One, or other Released Parties.

8. **Notice.** Any notice required to be provided under the terms of this Agreement by either party shall be provided by sending the required notice and/or documents and materials via e-mail and certified U.S. Mail, with postage prepaid, to the respective addresses:

The Trustee: Jonathan R. Goldsmith, Esq.
Egan, Flanagan & Cohen, P.C.
67 Market Street
Springfield, MA 01103
jrg@efclaw.com

For Capital One: Capital One National Association
Attn: Christopher Edelman
1680 Capital One Drive
McLean, VA 22102-3491
christopher.edelman@capitalone.com

9. **Consideration Acknowledged.** The Parties acknowledge that the covenants contained in this Agreement provide good and sufficient consideration for every promise, duty, release, obligation and right contained in this Agreement.

10. **Authority.** The Parties hereby warrant and represent that this Agreement has been duly authorized, executed and delivered by them, that this Agreement constitutes valid and binding obligations enforceable against them in accordance with the terms contained herein and that the execution and delivery of this Agreement will not violate or contravene any agreement of instrument to which any of the Parties is a party.

11. **Ownership of Claims.** The Trustee acknowledges, warrants and represents that he is the sole and absolute legal and equitable owner of all of the claims and causes of action which he releases by this Agreement and that the Trustee has not sold, assigned, granted, transferred or hypothecated, or disposed of in fact, by operation of law or in any manner whatsoever, and will not sell, assign, grant, transfer or hypothecate to any other person, firm or corporation, any of such claims or causes of action or any part thereof.

12. **Costs and Attorneys' Fees.** The Parties agree that they will each pay their own respective attorneys' fees and costs incurred in connection with the Bankruptcy Case and the Adversary Proceeding.

13. **Entirety and Amendments.** This instrument embodies the entire agreement between the Parties regarding this settlement, supersedes all prior agreements and understandings, if any, relating to the subject matter hereof and may be amended only by an instrument in writing executed jointly by the Parties, and supplemented only by documents delivered, or to be delivered, in accordance with the express terms hereof. For the avoidance of doubt, nothing in this Agreement regarding this settlement shall modify the Customer Agreement governing the Account.

14. **Further Assurances.** The Parties agree that, upon the request of any of the Parties, they will execute and deliver such further documents and undertake such further action as may reasonably be required to affect any of the agreements and covenants contained in this Agreement.

15. **Parties Bound.** This Agreement shall be binding upon and inure to the benefit of the Parties, their respective heirs, successors and assigns.

16. **Agreement Read by Parties.** The Parties agree that they have read, and that they have had their legal counsel review, this Agreement before signing it.

17. **Construction.** The Parties agree that this Agreement is an instrument negotiated by all of the Parties and will not be construed against its drafter.

18. **Voluntary Agreement/Attorney Representation.** In entering into this Agreement, the Parties have not relied on any statements or representations pertaining to this matter by the other side, or by any person representing the other side. The Parties represent that in the execution and negotiation of this Agreement, they are represented by counsel of their choice and that said attorneys advised their respective clients with respect to the advisability of making the settlement and release provided herein and of executing this Agreement; or if they are not represented by counsel, that they had the opportunity to consult legal counsel of their own selection and the decision not to be represented by counsel is a decision that the Parties have freely made. The Parties further represent and warrant that they are fully aware of the terms contained in this Agreement, made any desired changes and have voluntarily and without coercion, duress or undue influence of any kind, entered into this Agreement and the documents executed in connection with this Agreement.

19. **Counterparts.** This Agreement may be executed in any number of identical counterparts and via facsimile, electronic or digital signature or electronic scan of original signatures, each of which shall be deemed to be an original for all purposes.

20. **Invalid Provisions.** In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such as invalidity, illegality or unenforceability shall not affect any other provision(s) of this Agreement; provided, however, that if the covenant not to sue in Paragraph 3 and the release in Paragraph 5 is determined to be void, illegal, invalid or unenforceable, Capital One shall be entitled to repayment of the Settlement Funds. Subject to the foregoing exception, this Agreement shall be construed as if any invalid, illegal or unenforceable provision(s) had never been contained herein and this Agreement shall be enforceable to the fullest extent permitted by law.

THE UNDERSIGNED HAVE READ THE FOREGOING AGREEMENT, FULLY UNDERSTAND IT AND AGREE TO THE TERMS SET FORTH HEREIN.

Jonathan R. Goldsmith, as Chapter 7 Trustee
for Empire 1 Home Improvements, Inc.

[signature] Date: 8/5/2026

Capital One National Association

Signed by:

By: Christopher Edelman Date: August 6, 2026

FCB6D76921404D4...

Name: Christopher Edelman
Title: Senior Counsel